Merle D. VINCENT, Jr., Regional Director of the Third Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 294, Respondent.

United States District Court
S. D. New York.
March 22, 1963.

Stuart Rothman, General Counsel, National Labor Relations Board, Jacques Schurre, New York City, Attorney for National Labor Relations Board, of counsel, for petitioner.

I. Philip Sipser, New York City, Harry Pozefsky, Gloversville, N. Y., of counsel, for respondent.

DAWSON, District Judge.

This is a petition under Section 10(*l*) of the National Labor Relations Act for a preliminary injunction restraining acts which the National Labor Relations Board alleges are in violation of the act. A hearing has been held and testimony taken. The Court finds the following facts:

1. Petitioner is the Regional Director of the Third Region of the National Labor Relations Board and files this petition for and on behalf of the Board. Petitioner claims that he had reasonable cause to believe, and believes, that the respondent (Teamsters) has engaged in and is engaging in acts and conduct in violation of certain provisions of the act.

2. On or about February 11, 1963, Lumber Yard Employees Local Union No. 1150, of the United Brotherhood of Carpenters and Joiners of America, AFL–CIO (hereinafter called Carpenters), filed the charge alleging that the respondent was engaging in unfair labor practices.

3. M. W. Kellogg Company, as prime contractor, is erecting an addition to a cement plant at Cementon, Greene County, New York. Kellogg subcontracted the grading and foundation work to A. S. Wikstrom, Inc. (hereinafter called Wikstrom).

4. Wikstrom is a party to a collective bargaining agreement with respondent which recognizes the respondent union (Teamsters) as the sole labor organization representing employees covered by the Brotherhood of Teamsters jurisdiction. This would include the drivers of "Agitator or Mixer Trucks" delivering concrete, and the territory includes Greene County. This would mean that members of respondent (Teamsters) would do all work of driving on the job site and this would be equally applicable to subcontractors.

5. Wikstrom ordered certain redi-mix concrete from Island Dock Lumber, Inc. (hereinafter called Island Dock) of Kingston, New York. Island Dock's drivers are represented by Carpenters, a certified union, with whom Island Dock has a collective bargaining agreement. Carpenters received a rumor that Wikstrom had cancelled its order with Island Dock because of pressure by the Teamsters, the respondent union herein. Carpenters therefore called a strike of those carpenters it had working on the project, in protest. A conference was held at which representatives of Kellogg, Wikstrom, respondent and Carpenters were present, and at which Island Dock was not represented. At that conference a practical solution to the problem was arrived at and the strike ended. The parties agreed that Island Dock might deliver the redi-mix concrete to the job site at Cementon, which is an area of about 100 acres, but that when the cement truck arrived at the entrance to the job site a member of the Teamsters (the respondent herein) would ride the truck from the entrance to the place at which the concrete was delivered or poured. This apparently was satisfactory to Kellogg, Wikstrom, the respondent and Carpenters. However, thereafter Island Dock objected to hav-

ing anybody ride on its trucks who was not its employee and refused to grant permission to a representative of the Teamsters to ride on its truck, even from the entrance gate of the job site to the place at which the concrete was to be poured.

6. On January 7, 1963, a shipment of concrete was dispatched from Island Dock's plant in two trucks. When the drivers, who were members of the Carpenters union, reached the job site they were stopped by respondent's job steward and two other members of respondent and told that it was necessary that a member of respondent's union ride on the truck within the job site area. The drivers of Island Dock refused to allow this to be done and as a result returned to Island Dock's plant without unloading. The result of this situation was that Wikstrom cancelled its order with Island Dock and engaged another firm which employs members of respondent union to deliver the concrete.

### Discussion

■■ A prerequisite to the granting of injunctive relief under Section 10($l$) of the act, is a finding by the Court that a violation of the act, as charged, has been committed and that injunctive relief is "just and proper." The ultimate determination as to whether a violation of the act has been committed is a matter for determination by the Board; but it is obvious that the preliminary injunction should not be granted by the Court unless is it convinced that the Regional Director was reasonably of the belief that there had been a violation of the act.

What was the violation of the act as disclosed by the facts in this case? Although the brief submitted by the Board indicates that this is a "hot cargo" case,[1] the facts do not bear it out. The provision of the act relied upon by the Board, which is the "hot cargo" provi-sion, is Section 8(e) of the act which reads as follows:

"It shall be an unfair labor practice for any labor orgnization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business. with any other person, and any contract or agreement entered into here-- tofore or hereafter containing such an agreement shall be to such extent. unenforcible and void: *Provided,*. That nothing in this subsection [(e)] shall apply to an agreement. between a labor organization and an employer in the construction indus-try relating to the contracting or subcontracting of work to be done at the site of the construction, altera-tion, painting, or repair of a build-ing, structure, or other work. * *"

Section 8(b) (4) of the act makes it an unfair labor practice for a labor or-ganization or its agents

"(ii) to threaten, coerce, or restrain any person engaged in commerce or in any industry affecting commerce, where in either case an object there-of is—(A) forcing or requiring any employer or self-employed person * * * to enter into any agreement. which is prohibited by section 8(e) ;. (B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other produc-er, processor, or manufacturer, or to cease doing business with any other person * * *."

■ It is not clear how any facts ad-duced by the Board have established an unfair labor practice in this case. True,. respondent did have an agreement with

---

1. See Note: Hot Cargo Agreements under The National Labor Relations Act, 38 N.Y.U.Law Review, p. 97.

Wikstrom, the effect of which was that members of respondent should do all the work of hauling on the job site, and that this would apply equally to any subcontract let by Wikstrom for work on the job site. The job site of this construction was a large area comprising approximately 100 acres. This agreement of respondent was not a violation of Section 8(e) since it came within the provisions relating to the contracting or subcontracting of work "to be done at the site of the construction." There was, therefore, no evidence that respondent had violated subdivision (A) of Section 8(b) (4).

■ Nor does it appear that respondent had violated subdivsion (B) of Section 8(b) (4). It had not forced or required Wikstrom to cease using the concrete of Island Dock. Respondent had the right under its union contract to do the hauling for Wikstrom, or any subcontractor, on the job site. It was willing to forego that right if one of its members was permitted to ride the redi-mix truck at the job site, even though the truck was driven by an employee of Island Dock. This arrangement, apparently, was satisfactory to the contractor, the subcontractor and the union that represented the employees of Island Dock. It seemed a reasonable settlement to all concerned, but Island Dock refused to agree. It refused to allow any but its own employees to ride on its trucks. It had a legal right to so refuse, but it did not have a right to drive its trucks on the job site if Wikstrom did not wish them to be driven on the job site; and Wikstrom had no right, under its union contract, to have trucks driven on the job site unless they were driven by members of respondent union. By the refusal of Island Dock to allow anybody but its employees to drive its trucks on the job site, it eliminated itself as the supplier of concrete for this job. Nobody coerced it, or Wikstrom, in a manner prohibited by the act.

### Conclusion

The Court concludes that petitioner has not established that there is reasonable cause to believe that a violation of the act, as charged, has been committed. The motion for a temporary injunction is denied.